# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-16-00219-TUC-JGZ (DTF) |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Andrew Paul Mize, et al. | |
| Defendants. | |

In an October 12, 2017 Report ("R&R") (Doc. 226), Magistrate Judge Thomas Ferraro recommended denying: (1) Defendant Slayden's Motion for Reconsideration and Rehearing on Motion to Suppress (Doc. 133); (2) Slayden's Amended Motion to Suppress (Doc. 148); and (3) Defendant Mize's Motion to Suppress Illegal Checkpoint Search (Doc. 136). The Defendants filed timely Objections to the R&R (Docs. 230 & Doc. 232),[1] and the Government filed a response to the Objections. (Doc. 234.) A technical amendment was made to the R&R on December 22, 2017 to correct the caption. (Doc. 239.) Upon independent review of the record, the Court will adopt the Report and Recommendation (Doc. 239).

## I. STANDARD OF REVIEW

The Court reviews *de novo* the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The Court reviews for clear error the unobjected-to

---

[1] Defendant also filed a supplemental memorandum in support of his Objection. (Doc. 238.)

portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir.1999); see also *Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

Credibility findings of a magistrate judge may be adopted without conducting further evidentiary review. 28 U.S.C. § 636(b)(1). However, if a district court rejects the credibility findings of the magistrate judge, a *de novo* hearing is required. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002).

## II. FACTUAL FINDINGS AND LEGAL CONCLUSIONS

The parties do not challenge the Magistrate Judge's factual findings—only the legal significance of those findings.[2] Accordingly, the Court will adopt the findings as set forth in the Factual Background section of the R&R. (Doc. 239.)

## III. DISCUSSION

Defendant Slayden argues that the Magistrate Judge erred by: (a) declining to evaluate whether the border patrol checkpoint was constitutional; (b) finding that Defendants' detention at the checkpoint was not an arrest without probable cause; (c) concluding Defendant was not subjected to custodial interrogation in violation of *Miranda v. Arizona*; (d) determining Agent Smith and Ranger Rinck's erroneous October 5, 2016 testimony was reasonably mistaken rather than recklessly false; (5) concluding the canine Anouk alerted to Defendants' vehicle, providing probable cause to search the vehicle; and (6) failing to address his claim that the warrantless search of the vehicle was unconstitutional. (Doc. 230, p. 1-2.)

Defendant Mize raises two objections: (1) the Magistrate Judge failed to address the border checkpoint's constitutionality by analyzing its primary purpose, and (2) if the constitutionality of the border patrol checkpoint is not at issue, the Magistrate Judge

---

[2] Defendant Slayden argues that the Magistrate Judge incorrectly found that the canine Anouk "alerted" to the Defendants' vehicle. (Doc. 230, p. 7.) Because, as discussed in section E, a canine's alert, or final indication, is not necessary for the establishment of probable cause, the Court does not consider this factual challenge.

The Magistrate Judge's credibility finding with respect to Agent Smith is discussed in Section D, nt. 4.

incorrectly applied border-crossing law to find that Defendants were not arrested, but were merely detained, at the border checkpoint. (Doc. 232.)

**A. The Magistrate Judge did not err in failing to evaluate the constitutionality of the checkpoint.**

Defendants Slayden and Mize argue that stop of their vehicle was illegal because it occurred at a border patrol checkpoint that operates as a general crimes checkpoint. Defendants' argument misses the mark.

General crimes checkpoints are unlawful. *United States v. Martinez-Fuerte,* 428 U.S. 543, 556-64 (1976). Unlike immigration checkpoints, general crimes checkpoints cannot be used to stop vehicles and develop reasonable suspicion or probable cause for detention or arrest. *Id.; cf. United States v. Soto-Zuniga,* 837 F.3d 992, 998-99 (9th Cir. 2016) (immigration checkpoints provide an exception to the general rule that a search or seizure is unreasonable unless it rests on individualized suspicion; immigration control is a valid purpose for stopping cars and posing questions without individualized suspicion.) The checkpoint's legality is not relevant here because the authority of the checkpoint was not used as a basis for forming reasonable suspicion.

Reasonable suspicion exists when the totality of the circumstances support a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Here reasonable suspicion existed that Defendants were transporting marijuana in their vehicle before the Defendants arrived at the checkpoint. As set forth in the R&R, Border Patrol Agent Hughes observed eight individuals in camouflage cross through a hole in the International Boundary Fence carrying large packages consistent with marijuana bundles; the individuals entered an RV park located adjacent to the border. (Doc. 239, p. 2.) He observed the individuals cross back into Mexico, without the bundles (Doc. 111, 34:1-12), and saw a white utility truck leaving the RV park. (Doc. 239, p. 2.) Agent Hughes radioed the information to Ranger Rinck, who followed the vehicle toward the checkpoint. Ranger Rinck made additional observations about the vehicle that supported an objective, particularized belief that the

truck was transporting marijuana. Rinck observed that the truck's bed appeared old and its reflector marks appeared new; the telephone number on the truck's exterior was not hyphenated and did not reach Rural Electric, the business name displayed on the truck; and the license plate was not registered to Rural Electric. (Doc. 239, pp. 2-3.)

Defendants do not challenge the finding that reasonable suspicion existed prior to the checkpoint. Rather, they argue that law enforcement officers improperly use the checkpoint as a matter of "convenience" to stop vehicles when the agency develops reasonable suspicion that a crime has been committed. While it may be true that the agents use the checkpoint as a convenience, or, from the agents' perspective, as a safe and controlled environment in which to initiate a vehicle stop, the use of the checkpoint does not merit ignoring the fact that reasonable suspicion supported the detention of Defendants' vehicle. The reasonable suspicion did not become inert as the vehicle traversed the checkpoint regardless of the checkpoint's primary purpose.[3]

**B. The Magistrate Judge did not err in finding that Defendants' were detained, not arrested, at secondary inspection.**

Defendant Slayden objects to the Magistrate Judge's determination that Defendants were not under arrest until the marijuana was found. Defendant Slayden asserts that their stop and detention was not a "temporary detention occasioned by border crossing formalities" because the agents retained the Defendants' drivers licenses, Ranger Rinck pulled in behind Defendants' vehicle and provided security to make sure the Defendants could not leave, and Defendants were told they were detained and not free to leave. (Doc. 230.) The Court finds no error. Slayden and Mize were not arrested until after marijuana was discovered in their truck.

An arrest occurs "if, under the circumstances, a reasonable person would conclude

---

[3] Defendant Mize argues that the Court must assess the validity of the checkpoint because the Magistrate Judge relied on border stop cases in determining whether Defendants were placed under arrest. The Court disagrees. The Court analyzes the Defendants' claims that they were arrested, not detained, applying non-border law. *See* section B.

- 4 -

that he was not free to leave after brief questioning." *United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009). The "reasonable person" test presupposes an innocent person. *Florida v. Bostick,* 501 U.S. 429, 438 (1991). An investigative stop is not transformed into an arrest merely because a defendant is told he is not free to leave, or merely because his freedom of movement is restricted. *See United States v. Patterson*, 648 F.2d 625, 633 (9th Cir. 1981); *United States v. Jones*, 759 F.2d 633, 639 (8th Cir. 1985) ("the fact that a person may reasonably believe he is no longer free to leave indicates only that a consensual encounter has evolved into a seizure implicating [F]ourth [A]mendment values and not that an 'arrest' has occurred.")

A reasonable innocent person in the Defendants' circumstances would not conclude he was under arrest. Defendants were not summoned away from their daily routines. They voluntarily entered a fixed border patrol checkpoint on State Route 85, twenty miles north of the border. *See Martinez-Fuerte*, 428 U.S. at 559 ("The regularized manner in which established checkpoints are operated is visible evidence, reassuring to law-abiding motorists, that the stops are duly authorized and believed to serve the public interest."). At primary, agents asked two to three minutes of routine screening questions to identify where Defendants were coming from and what their business was near the border. (Doc. 111, pp. 121-22.) Defendant Mize, the driver, did not respond, but Defendant Slayden, the passenger, stated that they were electricians and had a job at the Gringo Pass RV Park. (Doc. 239, p. 3.) Defendants, however, could not produce a work order, invoice, or contact information for the person ordering the work, only a first name of the alleged customer. . (Doc. 239, p. 3.)

Based on Defendants' responses and the information previously overheard, the Defendants were directed to secondary inspection. As Defendants drove the vehicle to the secondary inspection area, Agent Smith noticed fresh paint on the tool box and a large compartment in the middle of the truck's cargo area that appeared inaccessible and could hold contraband. He also noticed that the truck was missing a Registrar of Contractors license number, which Agent Smith typically sees on contractors' vehicles. (Doc. 239, p.

3-4.)

The Court agrees with the Magistrate Judge that probable cause to search the vehicle existed at this time. *See Soto-Zuniga*, 837 F.3d at 1003-04 (probable cause to search exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place based on a totality of the circumstances); *United States v. Davis,* 530 F.3d 1069, 1084 (9th Cir. 2008) (probable cause determinations may be based in part on reasonable inferences). However, Defendants were not confronted with evidence of guilt. Rather, at secondary inspection, Defendants were permitted to remain near the truck where Defendant Slayden recorded the encounter on his cell phone without interference. (Doc. 239, p. 4.) Defendants were not handcuffed or physically restrained at any point. (Doc. 239, pp. 3-5.) It is undisputed that, at secondary, Border Patrol agents told Defendants they were not free to leave, retained Defendants' drivers' licenses and parked Ranger Rinck's vehicle behind Defendants' truck for security. However, in light of the short duration and circumstances of the detention, the Court concludes that a reasonable innocent individual would believe he was free to leave once the checkpoint formalities were concluded.

### C. No *Miranda* violation occurred.

Defendants argue that their detention at the checkpoint constituted a custodial interrogation and that any statements made prior to *Miranda* warnings being given are inadmissible. (Doc. 230, p. 5.)

*Miranda* warnings are required during questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 346, 443 (1966). An officer's obligation to administer *Miranda* warnings attaches, however, "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977) *(per curiam);* see also *Illinois v. Perkins,* 496 U.S. 292, 296 (1990). In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry

is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125 (1983) *(per curiam)* (quoting *Mathiason,* 429 U.S. 492, 495 (1977)).

In determining whether detention rises to the level of "custody" within the meaning of *Miranda*, courts must examine the "objective circumstances of the interrogation." *United States v. Butler*, 249 F.3d 1094, 1099 (9th Cir. 2001) (citing *Stansbury v. California*, 511 U.S. 318, 323 (1994)). One is in custody if a reasonable person would believe that he or she was not free to leave. *United States v. Kim*, 292 F.3d 969, 973-74 (9th Cir. 2002). The following factors are relevant to a finding of custody: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id*. at 974 (citations omitted). "Although the existence or non-existence of probable cause might be one factor to consider in determining someone's custodial status in the twilight zone between detention and custody, what ultimately matters to the determination of whether *Miranda* is triggered is custody." *Butler*, 249 F.3d at 1099.

The objective circumstances do not support Defendants' argument that they were in custody for the purposes of *Miranda* upon referral to secondary. The circumstances of their detention as set forth in in Section B above would not lead a reasonable person to believe that he was in custody until the officers found marijuana in the vehicle and formally arrested Defendants. The Court rejects Defendants' argument that a motorist's voluntary entry into a permanent immigration checkpoint is the equivalent of being summoned to a police station for questioning.

In addition, Defendants have not shown that the agents' routine border checkpoint questions regarding Defendants' route and purpose for travel rose to the level of interrogation. *See United States v. Manasen*, 909 F.2d 1357, 1358 (9th Cir. 1990) ("Routine questioning by customs officials is normally not custodial interrogation that triggers *Miranda*.") Thus, because Defendants were neither in custody nor interrogated,

*Miranda* warnings were not required.

**D. Law enforcement officials' testimony at the suppression hearing was not recklessly false.**

Defendant Slayden asserts that law enforcement officials intentionally gave false testimony at the suppression hearing to support a finding that it was unusual for a utility truck like Defendants' truck to be leaving the RV park. (Doc. 230, p. 6.) Slayden argues that this testimony should be excluded from the Court's probable cause assessment. (Doc. 230, p. 6.) The Court disagrees.

Erroneous statements made "knowingly or with a reckless disregard for the truth," are set aside in the determination of probable cause. *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998). A finding of recklessness requires the testifying individual to harbor a "high degree of awareness of probable falsity." *Id.*

### 1. Agent Smith's Testimony

At the first suppression hearing Agent Smith testified that he was familiar with the maintenance person at the RV park; the worker was an American citizen who lives in Ajo and drives through the Border Patrol checkpoint every day; the worker carries tools for general maintenance in his small pickup truck; and Agent Smith had seen that individual at the RV park before. (Doc. 111, pp. 133-135.) At the second evidentiary hearing, it was established that Agent Smith was incorrect in his prior testimony. Defendant Slayden called Ramon Garcia, who performed landscaping maintenance at the RV park during the time period in question. (Doc. 192, p. 9.) Mr. Garcia testified that he is not a U.S. citizen and does not live in Ajo or drive through the checkpoint every day. (Doc. 192, pp. 12, 14.) He also testified that many different contractors provide services at the park, including the phone and electric companies based in Ajo, as well as a man from Apache Junction who did electrical work and maintained the well and the electric pump. (Doc. 192, pp. 15-16.) The government re-called Agent Smith, who testified that he had subsequently learned that the individual he had thought was the maintenance worker at the RV park is actually Cesar Aguirre, an employee of CSC Electric who

performs maintenance at the Lukeville Port of Entry. (Doc. 192, p. 59.) Smith learned that Aguirre maintains the employee housing at the Port of Entry, which abuts the RV park, and is located 500 to 1,000 feet from the entrance to the park. Aguirre was also called as a witness. He testified that he is a U.S. citizen who, during the time period in question, drove through the checkpoint every day on his way home to Ajo.

Searches and seizures based on reasonable mistakes of fact are nonetheless constitutional. *Heien v. North Carolina,* 135 S. Ct. 530, 536 (2014). The Court finds no error in the Magistrate Judge's determination that, in light of all of the evidence, Agent Smith's testimony was not made with a reckless disregard for the truth, but rather reflected reasonable mistakes of fact. (Doc. 239, p. 8.)[4] Agent Smith's mistaken belief that Mr. Aguirre worked at the RV park is not unreasonable. Agent Smith saw Mr. Aguirre at the RV Park. Agent Smith observed Mr. Aguirre daily passing through the checkpoint wearing a uniform. Agent Smith was unaware of Mr. Garcia, who did not often pass through the checkpoint. The Magistrate Judge observed Agent Smith testify at both hearings and heard Agent Smith's explanation for his incorrect testimony at the first hearing, as well as facts supporting Agent Smith's initial mistaken conclusion that Mr. Aguirre was the RV Park's maintenance worker. This explanation did not suggest that Agent Smith harbored a high degree of awareness that his testimony was false. The Court sees no basis for setting aside the Magistrate Judge's determination that Agent Smith credibly established that he made reasonable mistakes of fact at the first evidentiary hearing.

### 2. Ranger Rinck's Testimony

Ranger Rinck testified at the first hearing that a number of things about the Defendants' truck appeared suspicious and unprofessional to him, including that,

---

[4] It appears that Judge Ferraro's conclusion was based to some degree on his evaluation of the credibility of the law enforcement witness. (Doc. 239, p. 9.) To the extent that the Magistrate Judge made credibility determinations, the Court adopts those findings.

although the truck had a Rural Electric logo on the back of the truck,[5] the truck's decals were uneven and were stickers rather than painted on; the web address did not begin with a "www"; the telephone number on the side of the truck was not hyphenated; the vehicle was registered to an individual rather than to a company; and there was no Registrar of Contractors ("ROC") number on the side of the vehicle. (Doc. 226.)

Defendant Slayden objects to Magistrate Judge Ferraro's finding that any errors in Ranger Rinck's testimony were reasonable mistakes. Slayden argues that Ranger Rinck's testimony that he found the truck to be suspicious was unfounded and recklessly false because: a Google search printout showed that one can reach the website for the legitimate Rural Electric company without typing "www" into a web search engine; a registration history of Defendants' truck showed that the vehicle had previously been registered to individuals; Slayden never stated he was an employee of Rural Electric; and Slayden was not permitted under Arizona law to display an ROC number on his vehicle because he was not, in fact, a licensed contractor. (Doc. 230 at 6-7).

Defendant's objection to Ranger Rinck's testimony is specious. Ranger Rinck did not provide any inaccurate factual testimony. Defendants do not dispute Ranger Rinck's description of the truck's markings or that the truck was registered to an individual and not the Rural Electric Company. Ranger Rinck's inferences from this factually correct information were reasonable. That fact that some allegedly legitimate businesses might also have unpolished markings or include full website addresses with their logo does not undermine the reasonableness of Ranger Rinck's conclusions. Similarly, the fact that Slayden was not a licensed electrician and therefore could not include an ROC number on

---

[5] Slayden asserts that Agent Smith originally testified in October that no maintenance personnel or vehicles worked at the RV Park, but conceded, during impeachment, at the second hearing, that he had in fact seen "utility trucks and pump repair trucks going through the checkpoint to do work at the RV park." (Doc. 230, p. 6.) Slayden has confused the testimony of the witnesses. Ranger Rinck testified that he had never seen a contract utility truck entering and exiting the RV park. (Doc. 239, p. 9; Doc. 111, p. 71.) Agent Smith's subsequent testimony that he regularly saw contractors and other maintenance workers come through the checkpoint, including utility trucks and pump repair trucks, was not impeachment of Ranger Rinck's testimony. (Doc. 192, pp. 46-47.)

the truck's markings is irrelevant to Ranger Rinck's concern that the Rural Electric truck did not indicate an ROC number, as he had observed on other commercial vehicles. It was not unreasonable for Ranger Rinck to believe that an electric company would employ licensed technicians.

In sum, upon review of the record and the defendants' objections, the Court finds no error in the Magistrate Judge's determination that, in light of all of the evidence, Agent Smith's and Ranger Rinck's testimony was not recklessly false.

**E. Canine Anouk's alert behavior established probable cause for the vehicle search.**

Defendant Slayden objects to the Magistrate Judge's conclusion that canine Anouk's behavior constituted an "alert" establishing probable cause to search the vehicle. (Doc. 230, p. 7.) Defendant argues that because there was no indication by Anouk, no probable cause was established. (Doc. 230, p. 7.) The Court need not decide whether Anouk alerted to the presence of drugs in the vehicle because, as discussed in Section B above, probable cause to search the vehicle existed at the time the vehicle entered secondary inspection, prior to Anouk's arrival at the checkpoint.

To the extent there is any argument that probable cause did not exist prior to that time, the Court agrees that Anouk's behavior was sufficient for the trained agents to conclude that they had probable cause to search Defendants' truck. Probable cause is established by an alert by a reliable canine. *Florida v. Harris*, 568 U.S. 237, 248 (2013); *United States v. Thomas*, 726 F.3d 1086, 1098 (9th Cir. 2013) ("Evidence from a trained and reliable handler about alert behavior he recognized in his dog can be the basis for probable cause.") An alert is not required to establish probable cause. *Thomas*, 726 F.3d at 1098; *see also Florida v. Harris*, 568 U.S. 237, 248 (2013) ("the court should not prescribe . . . an inflexible set of evidentiary requirements" to determine if a dog alerted.). The Court agrees with the Magistrate Judge's conclusion that Anouk's behavior coupled with his handler's testimony that Anouk alerted is sufficient to find probable cause. Notably, both parties' expert witnesses testified that Anouk exhibited demonstrable, if not bright-line, indicating behavior, as recorded by Defendant Slayden.

**F. Because agents had probable cause to search the vehicle, they did not need a warrant.**

Finally, Defendant Slayden generally objects that neither a warrant nor exigent circumstances were present to justify the search of the Defendants' vehicle. (Doc. 230, p. 8.)

Because of the inherent mobility of automobiles, and the fact that there is a lesser expectation of privacy in vehicles than in houses, law enforcement may search a car without a warrant if they have probable cause to believe it contains contraband or evidence of a crime. *Carroll v. United* States, 267 U.S. 132 (1925). Probable cause to search a vehicle exists when there are "facts and circumstances within law enforcement officers' knowledge and of which they had reasonably trustworthy information . . . sufficient in themselves to warrant a man of reasonable caution in the belief that . . . contraband was being transported in the automobile which they stopped and searched." *United States v. Corral-Villavicencio*, 753 F.2d 785, 789-90 (9th Cir. 1985) (quoting *United States v. Patterson*, 492 F.2d 995, 997 (9th Cir. 1974).) Here, no warrant was required because, as discussed in Section B, probable cause existed to search the vehicle.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED THAT the Report and Recommendation is ADOPTED (Doc. 239).

IT IS FURTHER ORDERED THAT Defendant Slayden's Motion to Suppress (Doc. 148) and Motion for Reconsideration and Rehearing (Doc. 133) are DENIED.

//
//
//
//
//
//

IT IS FURTHER ORDERED THAT Defendant Mize's Motion to Suppress (Doc.

136) is DENIED.

In light of the Court's denial of the foregoing motions, IT IS FURTHER ORDERED GRANTING the Government's Motion in Limine to Preclude Evidence At Trial Regarding Legality of Stop (Doc. 137.)

Dated this 25th day of January, 2018.

_____
Honorable Jennifer G. Zipps
United States District Judge